FILED

'; 1 7 2004

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

HEALTHPOINT, LTD.,
DPT LABORATORIES, LTD., and
DFB PHARMACEUTICALS, INC.,

    Plaintiffs,

v.

ETHEX CORPORATION and KV
PHARMACEUTICALS, INC.,

    Defendants.

CIVIL NO. SA-01-CA-646-OG

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:    Honorable Orlando L. Garcia
        United States District Judge

Pursuant to the Order of re-referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.[2]

### I. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

---

[1] Docket no. 118.

[2] Id.

## II. PROCEDURAL HISTORY[3]

On July 14, 2004, the undersigned entered a report[4] addressing: (1) the motion for partial summary judgment filed by defendants Ethex Corporation and KV Pharmaceuticals, Inc. (hereinafter referred to collectively as "Ethex" or "defendants") on plaintiffs Healthpoint, Ltd., DPT Laboratories, Ltd., and DFB Pharmaceuticals, Inc.'s (hereinafter referred to collectively as "Healthpoint" or "plaintiffs") claims of false advertising in violation of the Lanham Act and of common law unfair competition;[5] (2) the cross-motion for partial summary judgment filed by Healthpoint on its own claims of false advertising in violation of the Lanham Act and of common law unfair competition;[6] and (3) the motion for partial summary judgment filed by Ethex on Healthpoint's claim of theft of trade secrets.[7] In brief, the July 14 report recommended that each of the three motions for partial summary judgment be denied.[8]

---

[3] A more detailed summary of the procedural history is included in the July 14, 2004 report and recommendations (docket no. 103).

[4] Docket no. 103.

[5] Docket no. 53.

[6] Docket no. 80.

[7] Docket no. 81.

[8] Id. at 79-80. The report also recommended denying as moot Healthpoint's alternative motion for continuance of the Court's ruling on Ethex's motion for summary judgment on Healthpoint's misappropriation of trade secrets claim pending the completion of scheduled depositions which, as argued by Healthpoint, could provide information raising additional genuine issues of material facts on the claim. Docket no. 99 at 11-12. Ethex opposed the continuance, asserting the proposed discovery would not be relevant or material. Docket no. 101 at 5.

On July 26, 2004, Ethex filed objections to the report,[9] and on August 9, 2004, Healthpoint filed a response to Ethex's objections.[10] Healthpoint has not objected to the report. On August 12, 2004,[11] the District Court re-referred an issue to the undersigned:

> Pending before the Court is the Report and Recommendation of the United States Magistrate Judge Pamela A. Mathy (Dkt. # 103) and Defendants' objections thereto (Dkt. # 107). Pursuant to 28 U.S.C. § 636(b)(1)(B), the district judge may recommit certain matters to the magistrate judge with instructions. With regard to

---

[9] Docket no. 107. As noted, the District Judge's August 12 Order of re-referral directs the undersigned's attention to pages 1-4 of Ethex's objections for a summary of Ethex's arguments with respect to the "one issue" re-referred. Accordingly, a relatively detailed summary of those pages is included in this note. Although aspects of the objections are discussed in greater detail in this report, when appropriate, certain observations about the objections are included in this note, when appropriate:

Ethex did not object to the five stated elements of the Lanham Act false advertising and common law unfair competition claims. Id. at 1-2. Ethex also asserts it finds agreement with the portion of the report that "correctly states, to be 'literally false' the statement in question 'must be unambiguous.' Report at 60." Id. at 2. But, a close examination of the noted passage from the report indicates that (a) the report notes that Ethex cited a Fourth Circuit and an Eighth Circuit case for the assertion, but not a Fifth Circuit case; and (b) it was preceded by the phrase, "[a]s Ethex argues," to accept, without necessarily deciding, Ethex's assertion for purposes of the discussion. Id. Ethex's objections contend that a statement is "ambiguous if it is subject to more than one reasonable interpretation of meaning [.] . . . a question of law, not fact," citing for support two Fifth Circuit cases addressing the construction of contract language. Id. Ethex asserts that because "the conclusion of law drawn in the Report and Recommendation (that both interpretations [of noted advertising representations] were reasonable) compels at least partial summary judgment for ETHEX, because advertising cannot be 'literally false' if it is subject to two reasonable interpretations." Id. at 3. In sum, Ethex argues that the report is "simply incorrect when it recommends that competing reasonable interpretations [of advertising representations] raise a 'fact question' which inherently precludes summary judgment" and the report "errs in not recommending, at a minimum, a partial summary judgment in favor of the Defendants that the statements in controversy are not 'literally false,'" because they are capable of more than one reasonable interpretation and therefore ambiguous and therefore cannot be literally false. Id. at 2-3.

[10] Docket no. 116.

[11] The Order is dated August 12, 2004 and was filed as of that date, but was not entered into the docket until August 16, 2004. Accordingly, the undersigned and the parties did not receive notice of or a copy of the Order until August 16.

3

> the report and recommendation filed on July 14, 2004, the Court recommits to
> Magistrate Judge Mathy only one issue addressed in the objections -- whether the
> advertising statements in issue are indeed ambiguous, based on the summary
> judgment evidence; and, if so, whether the Court must find, as a matter of law,
> that the statements are therefore misleading, rather than literally false. This issue
> is more clearly explained in pages 1-4 of Defendant's objections, and the Court
> requests that Magistrate Mathy supplement and/or amend her recommend[ation]
> after further examining this issue.[12]

To be very clear for the record, the District Judge has not referred to the undersigned the issue of resolving objections filed to her own report, clearly a matter reserved exclusively to the District Judge pursuant to standard law. Rather, the Order of re-referral "recommits only one issue addressed in the objections," and directs the undersigned to re-examine the "summary judgment evidence" addressed in the July 14, 2004 report, in light of Ethex's objections to the report, examine "whether the Court must find, as a matter of law, that the statements are therefore misleading, rather than literally false," and provide any relevant further discussion and recommendations.

Accordingly, this report is entered to re-address the question of "whether the advertising statements in issue are indeed ambiguous, based on summary judgment evidence," but does not make any recommendations as to the disposition of any objection to the July 14 report. In preparing the report, the undersigned has reviewed most particularly the cross-motions for summary judgment on Healthpoint's claim of false advertising in violation of the Lanham Act and claim of common law unfair competition, related pleadings, the proffered evidence, the District Court's Order overruling Ethex's appeal of the undersigned's May 21, 2004 Order

---

[12] Docket no. 118.

denying a motion to exclude the evidence and testimony of Lane J Brunner, Ph.D.,[13] and the text of the August 12, 2004 Order of re-referral.

### III. ANALYSIS

**A.   Ethex's Motion for Partial Summary Judgment on Healthpoint's Claims for False Advertising in Violation of the Lanham Act and Common Law Unfair Competition**

Ethex moved for partial summary judgment on Healthpoint's claims for false advertising in violation of the Lanham Act and common law unfair competition, arguing, as set out in its motion, that:

1. The complained of statements are ones of opinion, not fact;
2. Even if considered to be statement of fact, they are truthful and not false;
3. Truthful statements may not be rendered "misleading" by proof that they are subject to misunderstanding;
4. The Plaintiffs have no valid evidence of consumer confusion; and
5. The Plaintiffs' case is an impermissible attempted invasion of the FDA's jurisdiction.[14]

Ethex's motion did <u>not</u> raise ambiguity as a basis for granting summary judgment. More particularly, Ethex did not request entry of judgment as a matter of law that the statements at issue were "ambiguous" and not literally false.

In response and opposition to Ethex's request for entry of partial summary judgment, Healthpoint argued, in part, that Ethex's advertising statements that Ethezyme 830 has "the same active ingredients in the same amounts as appear on the label of the re-labeled Accuzyme" are literally false for the reason that Ethezyme 830 contains more papain activity than does

---

[13] Docket no. 117. Ethex's appeal of the undersigned's August 5, 2004 Order denying the motion to exclude the report and survey of E. Mick Kolassa, Ph.D. and Brian C. Reisetter, Ph.D. is pending before the District Court. See docket nos. 113 and 120.

[14] Docket no. 53 at 2.

Accuzyme.[15] In reply, Ethex argued that when the above-quoted advertising statements are read in context with the complete advertisements, the statements mean only that "the two products have the same labeled strength" and not that the products "have the identical specification ranges" or "the identical papain content in each tube."[16] Ethex asserted that its interpretation of the advertisement was "both a reasonable one and a truthful one."[17] For the first time, Ethex's reply referenced authority for the proposition that ambiguous advertisements cannot be literally false.[18] Ethex's reply did not include a request for leave to amend its motion for partial summary judgment to request entry of judgment as a matter of law that the statements in question were ambiguous.

In sum, because Ethex raised the alleged ambiguity of the statements in its reply, apparently intended to rebut Healthpoint's contention that the statements in question were literally false, and because Ethex did not request entry of partial judgment that the statements in question were ambiguous as a matter of law, Ethex is not entitled to entry of judgment as a matter of law that the statements in question are ambiguous and the recommended disposition of Ethex's motion for partial summary judgment on Healthpoint's Lanham Act and common law unfair competition claims should not be not amended.

---

[15] Docket no. 71 at 12-13.

[16] Docket no. 91 at 4.

[17] Id.

[18] Id.

6

## B. Healthpoint's Motion for Partial Summary Judgment on Its Claims for False Advertising in Violation of the Lanham Act and Common Law Unfair Competition

Healthpoint also moved for partial summary judgment on its Lanham Act false advertising and common law unfair competition claims, arguing, in part, that Ethex's advertising representations at issue are literally false on the ground that Ethezyme 830 contains more papain than Accuzyme.[19] In response and opposition to entry of partial judgment in favor of Healthpoint, Ethex asserted, in part, that when read in the proper context, the advertising representations at issue were simply "comparing the labeled amount of Ethezyme 830 to the labeled amount of Accuzyme."[20] Ethex again cited authority for the proposition that ambiguous statements cannot be literally false. Further, Ethex characterized Healthpoint's "unwarranted and factually unsupportable" position that Ethex's reference to the amount of papain activity in Ethezyme 830 was "ambiguous," arguing:

> The Plaintiff's approach to the advertisement is based on the utterly unwarranted and factually unsupportable theory that the reference in the letter to the amount of papain activity in Ethezyme 830 is an "implied" or "suggested" or "ambiguous" reference to the amount of such activity that chemical assays of production lots of the product would yield as opposed to the product's labeled strength.[21]

In the conclusion to its response, Ethex analogously asserted that Healthpoint's request for partial judgment should be denied because the false advertising and unfair competition claims at issue are based on "a non-actionable statement of opinion" and because

> [t]he three statements claimed to be literally false are not so. Read in context,

---

[19] Docket no. 80 at 9-14.

[20] Docket no. 98 at 9, 19.

[21] Id. at 8, 9.

7

read in a natural way, and read as parts of the whole to which they belong, they are completely truthful and accurate -- both products have labeled strengths of 830,000 units and the products are "alternatives."[22]

Consistent with its approach in support of its own motion for partial summary judgment, Ethex again asserted the advertising statements at issue were "literally true." Ethex did not argue that the advertising statements were ambiguous as a matter or law or that the alleged ambiguity of the statements precluded Healthpoint's request for entry of partial summary judgment or request that its position on the alleged ambiguity of the statements at issue be incorporated by reference into its own motion for partial summary judgment to provide an alternative basis for relief.[23]

In sum, because Ethex would receive the relief it requested when it opposed Healthpoint's motion for partial summary judgment if the undersigned's July 14, 2004 recommendation were to be accepted by the District Judge and because Healthpoint has not objected to this aspect of the report, the recommended disposition of Healthpoint's motion for partial summary judgment on its claims for false advertising in violation of the Lanham Act and common law unfair competition on the ground that the statements at issue were literally false should not be amended.

C.  The District Judge's August 12, 2004 Order as Notice to the Parties That the Court May Address the Question of Whether Ethex's Advertising Statements At Issue Are "Ambiguous" as a Matter of Law in Connection With the Pending Motions for Summary Judgment

As discussed, Ethex's arguments in reply/rebuttal in support of its own motion for entry

---

[22] Id. at 19-20.

[23] Ethex's response did incorporate by reference its own motion for partial summary judgment and its reply in support of the motion, but, as discussed above, neither document requests entry of partial judgment that the advertising statements at issue are ambiguous.

of partial judgment and in opposition to Healthpoint's request for partial judgment do not request entry of judgment as a matter of law that Ethex's advertising statements at issue are "ambiguous" and such relief should not be ordered on that basis. Ethex's objections to the July 14 report ask that the portions of the report that recommend the denial of Ethex's motions for summary judgment be rejected and that "both of the motions . . . be granted."[24] Again, Ethex's motions do not request entry of judgment as a matter of law that Ethex's advertising statements are ambiguous as a matter of law.

Nevertheless, the District Judge's August 12, 2004 Order of re-referral provides the parties notice that the Court may address the question of whether Ethex's advertising statements at issue are ambiguous in connection with its review of the July 14 report and underlying motions and pleadings, perhaps particularly so if the determination of ambiguity is a question of law for the Court and if a determination that statements are ambiguous precludes as a matter of law a determination that the statements are literally false. Based on the summary judgment argument and evidence, even when considered in light of Ethex's objections, it does not appear that such a determination is warranted at this juncture.

In its objections, Ethex argues that the report is "simply incorrect when it recommends that competing reasonable interpretations [of advertising representations] raise a 'fact question' which inherently precludes summary judgment" and the report "errs in not recommending, at a minimum, a partial summary judgment in favor of the Defendants that the statements in controversy are not 'literally false,'" because they are capable of more than one reasonable

---

[24] Docket no. 107 at 15.

9

interpretation, and therefore are ambiguous, and therefore cannot be literally false.[25] Ethex relies on two Fifth Circuit cases addressing the construction of contracts in support of its contention that the determination of whether a writing is ambiguous is a question of law.[26] But, Ethex has not cited Fifth Circuit authority holding that the rules of contract construction are also applicable to false advertising in a Lanham Act and common law unfair competition case.

In its reply in support of its motion for summary judgment and in its response to Healthpoint's motion for summary judgment, Ethex relies on two cases, one from the Fourth Circuit and one from the Eighth Circuit, in support of its contention that "ambiguous" statements cannot be literally false.[27] Although Scotts Company v. United Industries Corporation does include the language "'[o]nly an unambiguous message can be literally false'"[28] and United Industries Corporation v. Clorox Company states "[c]ommercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false,"[29] neither case holds, or discusses, whether ambiguity in a Lanham Act and common law unfair competition case is a question of law. But, in Clorox, an appeal from the grant of a preliminary injunction, the Eighth Circuit applied the "clearly erroneous" standard of review, applicable to

---

[25] Id. at 2-3.

[26] Geoscan, Inc. of Texas v. Geotrace Technologies, Inc., 226 F.3d 387, 390 (5th Cir. 2000); United States v. Fidelity and Deposit Co., 10 F.3d 1150, 1152 (5th Cir. 1994).

[27] Docket no. 98 at 8 (citing Scott's Co. v. United Indus. Corp., 315 F.3d 264, 274 (4th Cir. 2002) and United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1181 (8th Cir. 1998)).

[28] 315 F.3d at 276 (quoting Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 587 (3rd Cir. 2002)).

[29] 140 F.3d at 1181.

findings of fact,[30] to the district court's findings on the messages conveyed by the advertisements and the findings that messages were literally true.[31] Similarly, in Scotts, the Fourth Circuit included the following quotation:

> [A] factfinder might conclude that the message conveyed by a particular advertisement remains so balanced between several plausible meanings that the claim made by the advertisement is too uncertain to serve as the basis for a literal falsity claim, though even in that case it could still form the basis of a claim that the advertising is misleading.[32]

Although not expressly stated in either case, the Fourth and the Eighth Circuits appear to view the issue of whether an advertisement is subject to more than one meaning to be question of fact, a position in line with that of other courts.

In reviewing cases from the First, Second, Third, Sixth, Seventh, and Federal Circuit applying Third Circuit law -- found by the undersigned, not cited by the parties -- the undersigned has found that most of these courts apply the clearly erroneous standard of review to findings about what messages are conveyed by advertisements.[33] These cases do not reflect that a

---

[30] FED. R. CIV. P. 52(a).

[31] Id. at 1181-82 ("Thus, we cannot say that the court committed **clear error** in its determinations regarding the scope of the commercial's explicit claims of superiority (that it kills roaches within 24 hours and that a generic competitor does not), or in finding that claim to be literally true." (emphasis added)).

[32] 315 F.3d at 276 (quoting Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 35 (1st Cir. 2000)).

[33] Clorox Co. Puerto Rico, 228 F.3d at 34 ("At least two factual questions must be answered in evaluating the accuracy of any particular advertisement. First, a factfinder must determine the claim conveyed by the advertisement. . . . Once the claim made by the advertisement has been determined, the factfinder must then evaluate whether that claim is false." (citations omitted)); Avis Rent A Car Sys., Inc. v. Hertz Corp., 782 F.2d 381, 384 (2nd Cir. 1986) ("Although argument could be made to the contrary, . . we will assume arguendo . . . that the district judge's determination of the meaning of the advertisement was a finding of fact

11

district court must make a separate legal finding on ambiguity before the factfinder can determine what message an advertisement conveys and whether the message is literally false. Only the Sixth Circuit has held that "whether a statement is ambiguous is a question of law, while the determination as to whether facts exist so as to justify the statement is a question of fact."[34] The Sixth Circuit explained:

> Whether or not a statement is ambiguous would seem to be a question of law, as it is in contract interpretation.[35] On the other hand, the Second Circuit has held that whether or not a statement is facially false is a question of fact.[36] These two rules do not conflict because determining what meaning(s) words facially convey requires no weighing of evidence, while determining whether facts exist so as to make a statement true does require weighing evidence.[37]

---

that 'shall not be set aside unless clearly erroneous.' . . . This means . . . that we may not reverse the judge's findings that the advertisement referred to all cars rather than cars available for rental unless on the entire evidence we are 'left with the definite and firm conviction that a mistake has been committed.'" (citations omitted)); Johnson & Johnson v. GAC Int'l, Inc., 862 F.2d 975, 979 (2nd Cir. 1988) (rejecting district court's interpretation of advertisement's meaning and quoting Avis Rent A Car, 782 F.2d at 384); Novartis, 290 F.3d at 589 ("The phrase 'nighttime strength' therefore necessarily conveys a message that the MNTS product is specially made to work at night. We cannot say that the District Court's finding to that effect is clearly erroneous. We also cannot say that the District Court clearly erred in finding that this message is false."); BASF Corp. v. Old World Trading Co., Inc., 41 F.3d 1081, 1091 (7th Cir. 1994) ("The meaning of a given advertisement is a question of fact, . . . and the district court rejected Old World's interpretation. . . . Old World has not shown that this finding was clearly erroneous." (citations omitted)); Abdallah v. Pileggi, 152 F.3d 948, 1998 WL 180491, at * 3 (Fed Cir. Apr. 17, 1998) (unpublished opinion) ("We agree that any of the challenged statements made after the issuance of Mr. Abdallah's patent are sufficiently ambiguous that they raise a <u>material question of fact whether they are literally false</u>." (emphasis added)).

[34] American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, 185 F.3d 606, 615 n. 2 (6th Cir. 1999).

[35] Id. (citation omitted).

[36] Id. (citing Johnson & Johnson, 862 F.2d at 979).

[37] Id.

But, the Sixth Circuit did not note that the Second Circuit has reviewed district court determinations of what meaning to give advertisements under the clearly erroneous standard of review.[38] The undersigned notes that neither side has objected to the portion of the report that discusses the determination of literal truth/falsity as a factual matter. Although Ethex has objected that a determination of ambiguity is a question of law that precludes a finding of literal falsity, Ethex cites no authority to show that the determination of literal falsity is not a question of fact. Moreover, neither side has had the opportunity to brief the question of whether or not the cases cited by the Court and other precedent lend persuasive authority to the issue at hand -- whether the ambiguity of advertisements under the Lanham Act and common law unfair competition claims at issue should be resolved as a question of law or of fact or both.

As stated in the July 14 report, the undersigned considers Healthpoint's summary judgment case on the literal falsity of at least some of Ethex's advertising representations to be quite strong. Nevertheless, when construing all evidence and inferences in the light most favorable to non-movant Ethex, the undersigned recommended that Healthpoint not be awarded the partial judgment it sought on that basis, determining, in the end, that the factual disputes on the truth/falsity of the statements were material and genuine and sufficiently pervasive to preclude the finding that no reasonable juror could find against Healthpoint on the issue. Were this recommendation to be accepted by the District Judge, it would not preclude the Court from, at some later time and based on a more comprehensive record of evidence and legal argument from the parties, directing entry of judgment on the issue of truth/falsity or, as discussed herein, ambiguity. Even if the Court were to conclude that the advertising statements at issue were

---

[38] See Johnson & Johnson, 862 F.2d at 979-80; Avis Rent A Car, 782 F.2d at 384.

"ambiguous," and are not literally true or literally false as contended by the parties in the underlying cross-motions for partial summary judgment, the question of whether the (ambiguous) statements are misleading would remain a question for the finder of fact.[39]

In sum, the undersigned recommends that whether Ethex's advertising representations are "ambiguous" as a matter of law – and not literally true (as argued by Ethex in support of its motion for partial judgment and in opposition to Healthpoint's motion for partial judgment on the false advertising and unfair competition claims) or literally false (as argued by Healthpoint in support of its motion for partial summary judgment) – not be made at this juncture on this record. Neither side has requested expressly such relief in the pleadings below. It is unclear that the determination of the "ambiguity" of an advertising representation is a pure questions of law, as asserted by Ethex, rather than a question of fact. If the analysis in the July 14 report is accepted, the Court will hold there is a genuine issue of material fact as to whether the advertising statements at issue are literally false, as alleged by Healthpoint in its live pleading and as directly at issue by the pertinent cross-motions; this recommended resolution will not preclude the District Court at a later time from directing entry of judgment in favor of Ethex on the issue of truth/falsity and ambiguity.

## IV. CONCLUSION

Based on the foregoing analysis, the recommendations contained within the July 14, 2004 report have not been amended by this report.

---

[39] But see docket no. 118 at 1. Under Fifth Circuit law, if the advertising statements were to be found to be literally false, plaintiffs are entitled to a presumption and need not present evidence of consumer impact need to be established, but if the same statements are ambiguous and misleading, plaintiffs would be required to establish consumer impact as further discussed in the July 14 report and Ethex's objections.

Further, to the extent the District Judge has directed the undersigned to make a supplemental recommendation on whether Ethex's advertising statements at issue are "ambiguous" as a matter of law, and, therefore, cannot be considered to be "literally true" (as argued by Ethex in support of its motion for partial summary judgment on Healthpoint's Lanham Act false advertising and common law unfair competition claims) or "literally false" (as argued by Healthpoint in support of its motion for partial summary judgment on the same claims), the undersigned recommends that such a determination not be made at this juncture on this record.

Finally, pursuant to the terms of the August 12, 2004 Order of re-referral, this case is **returned** to the District Judge.

## V. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on each and every party either (1) by certified mail, return receipt requested, or (2) by facsimile if authorization to do so is on file with the Clerk. According to Title 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this report must serve and file written objections to the Report and Recommendation within 10 days after being served with a copy unless this time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections. **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party's

failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a <u>de novo</u> determination by the District Court.[40] Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[41]

**SIGNED and ENTERED** this 17 day of August, 2004.

*Pamela Mathy*
**Pamela A. Mathy**
**United States Magistrate Judge**

---

[40] See <u>Thomas v. Arn</u>, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

[41] <u>Acuna v. Brown & Root Inc.</u>, 200 F.3d 335, 340 (5th Cir. 2000); <u>Douglass v. United Serv. Auto. Ass'n.</u>, 79 F.3d 1415, 1428 (5th Cir.1996).